[Cite as *State v. Shover*, 2012-Ohio-3788.]

STATE OF OHIO )  IN THE COURT OF APPEALS
 )ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO   C.A. No.     25944

    Appellee

    v.  APPEAL FROM JUDGMENT
  ENTERED IN THE
SEAN E. SHOVER  COURT OF COMMON PLEAS
  COUNTY OF SUMMIT, OHIO
    Appellant  CASE No.     CR 10 09 2587 (B)

DECISION AND JOURNAL ENTRY

Dated: August 22, 2012

---

BELFANCE, Judge.

{¶1}   Sean Shover appeals from his conviction for improper handling of a firearm in a motor vehicle.  For the reasons set forth below, we reverse the trial court's denial of Mr. Shover's motion to dismiss and remand the matter for further proceedings.

I.

{¶2}   Mr. Shover's father received a call from Mr. Shover's brother, who said that he owed a man $20 and that the man had a gun.  Mr. Shover and his father drove to Akron to give Mr. Shover's brother the money.   As Mr. Shover's brother had been shot before, Mr. Shover's father brought a loaded gun along for protection.  The two men arrived at a gas station, and Mr. Shover's brother entered the back seat of the car.  Police, responding to a reported kidnapping, surrounded the vehicle and ordered the men out.  After the men had exited the vehicle, one of the officers saw the gun between the seats of the car, and Mr. Shover, his father, and his brother were arrested.

{¶3} A jury convicted Mr. Shover of improper handling of a firearm in a motor vehicle but acquitted him of resisting arrest. The jury could not reach a verdict on the charge of carrying a concealed weapon, which was subsequently dismissed at the State's request. The trial court sentenced Mr. Shover to 18 months of community control and ordered him to pay a $500 fine as well as court costs. Mr. Shover has appealed, raising six assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT DISMISSING DEFENDANT'S CHARGE OR CONVICTION OF IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE BECAUSE THE CHARGE AND CONVICTION W[ERE] UNCONSTITUTIONAL UNDER THE U.S. CONSTITUTION'S SECOND AMENDMENT.

{¶4} Mr. Shover argues in his first assignment of error that R.C. 2923.16(B) is unconstitutional in light of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, ___ U.S. ___, 130 S.Ct. 3020 (2010), because it "does not contain an exception for a person to transport a loaded handgun when there is a reasonable fear of a criminal attack."

*Heller* and *McDonald*

{¶5} In *Heller*, the respondent challenged two ordinances: (1) a prohibition on carrying an unregistered firearm (handguns could not be registered) and (2) a law requiring "residents to keep their lawfully owned firearms, such as registered long guns, 'unloaded and disassembled or bound by a trigger lock or similar device' unless they are located in a place of business or are being used for lawful recreational activities." *Id*. at 574-575. The Court mentioned a third ordinance that prohibited an individual from carrying any handgun without a license, but respondent did not challenge the constitutionality of this ordinance. *See id*. at 575, 630-631

("Respondent conceded at oral argument that he does not 'have a problem with ... licensing[.]'") (Ellipses sic.).

{¶6}    The Court concluded that the prohibition on carrying an unregistered firearm in the home and the requirement that lawful firearms be rendered inoperable for immediate use in self-defense violated the Second Amendment. *Id.* at 635. In reaching this conclusion, the Court noted that "[f]ew laws in the history of our Nation have come close to the severe restriction of the District's handgun ban." *Id.* at 629. "[H]andguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *Id*. This is because self-defense is "the *central component* of the [Second Amendment]." (Emphasis sic.) *Id*. at 599. "The handgun ban amount[ed] to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose. The prohibition extend[ed], moreover, to the home, where the need for defense of self, family, and property is most acute." *Id*. at 628.

{¶7}    However, the Court also noted that "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. The Court stated that its holding should not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626-627. It also suggested that concealed weapons laws were also permissible. *See id.* at 626; *see also id.* at 627, fn. 26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.").

{¶8}    Two years after *Heller*, the Supreme Court answered the question whether the Fourteenth Amendment had incorporated the Second Amendment in the affirmative. *McDonald*,

130 S.Ct. at 3050. The Court proceeded to strike down Chicago's handgun ban that was substantially similar to the one in the District of Columbia. *See id.* at 3026, 3050.

## The Trial Court's Decision

{¶9} In the trial court's journal entry overruling Mr. Shover's motion to dismiss the improper handling of a firearm in a vehicle and carrying a concealed weapon charges, it concluded that, "[b]ecause Ohio has already found that its citizens had the right to bear arms under its state constitution, the *McDonald* opinion did not upset the status quo in Ohio." In other words, the trial court did not reach the question of whether the Second Amendment applied in this case, apparently believing that the Second Amendment required no more rigorous review than that already required by the Ohio Constitution for laws infringing upon the right to bear arms. However, the trial court was incorrect because *Heller* and *McDonald* indicate that courts must apply a heightened level of scrutiny to laws infringing upon a Second Amendment right.

## Level of Scrutiny

{¶10} When considering Ohio Constitution, Article I, Section 4, the Ohio Supreme Court has previously concluded that the test for whether a gun control law is constitutional "is one of reasonableness." *Arnold v. Cleveland*, 67 Ohio St.3d 35, 47 (1993). The Court reaffirmed this standard in *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779. *Id.* at ¶ 14.

{¶11} However, *Arnold* and *Klein* set forth the level of scrutiny applicable to gun-control laws under the Ohio Constitution. *See Arnold* at 46-48; *Klein* at ¶ 5, 13-15. Though *Heller* did not set forth the precise level of scrutiny a gun control law would be subject to, it did reject the notion that the laws would be reviewed under the rational-basis test. *Heller*, 554 U.S. at 628, fn. 27 (rational basis "c[an]not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double

jeopardy, the right to counsel, or the right to keep and bear arms[]"). The Court also rejected an "'interest-balancing'" standard set forth by Justice Breyer in his dissent, remarking that the Bill of Rights itself was the result of interest balancing. *Id*. at 634-635. Instead, as with other enumerated constitutional rights, laws restricting the right to bear arms are subject to heightened scrutiny. *See id*. at 628. *See,e.g., Johnson v. California*, 543 U.S. 499, 505 (2005) ("Under strict scrutiny, *the government* has the burden of proving that [a law is] narrowly tailored [to] further compelling governmental interests.") (Emphasis added.) (Internal quotations and citations omitted.); *Bd. of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989) (noting that, "*the State* bears the burden of justifying its restrictions" on commercial speech and showing a "fit between the legislature's ends and the means chosen to accomplish those ends[]") (Emphasis added.) (Internal quotations and citations omitted.). *See generally United States v. Alvarez*, ___ U.S. ___, 132 S.Ct. 2537, 2552 (2012) (Breyer, J., concurring in judgment) (compiling cases and discussing the multiple forms of scrutiny that "warrant[] neither near-automatic condemnation (as 'strict scrutiny' implies) nor near-automatic approval (as is implicit in 'rational basis' review)[]").

{¶12} Ohio courts have not reached any consensus as to the proper level of scrutiny in the aftermath of *Heller*. In *State v. Henderson*, 11th Dist. No. 2010-P-0046, 2012-Ohio-1268, the lead opinion applied intermediate scrutiny. *See id*. at ¶ 48-49, citing *Klein* at ¶ 23 (O'Connor, J., dissenting). However, the concurrence disagreed that intermediate scrutiny was appropriate, *Henderson* at ¶ 62-64 (Wright, J., concurring in judgment only) (stating that he would "simply apply[] the long standing principle that statutes are presumed constitutional and uphold[] the statute due to a complete lack of argumentation and briefing on the determinative licensure requirement[]"), while the dissent adopted no level of scrutiny but would have found

R.C. 2923.16(B) unconstitutional. *Id*. at ¶ 76-84 (Grendall, J., dissenting). In *State v. King*, 2d. Dist. No. 24141, 2011-Ohio-3417, the court recited the standard set forth in *Klein* and *Arnold*. *Id*. at ¶ 22.

{¶13} However, while the *Heller* court left unresolved the question of precisely which level of scrutiny should be applied to laws restricting Second Amendment rights, it did hold that those laws were subject to heightened scrutiny. Accordingly, when considering a Second Amendment challenge, *Heller* requires a greater level of scrutiny than that required by *Arnold* and *Klein*. *See, e.g., Heller v. District of Columbia*, 670 F.3d 1244, 1257-1258 (D.C.Cir.2011) (registration requirements subject to intermediate scrutiny because they do not prevent an individual from possessing a firearm); *see also Ezell v. Chicago*, 651 F.3d 684, 708 (7th Cir.2011) (concluding that the city's ban on firing ranges was subject to "a more rigorous showing than [intermediate scrutiny], * * * if not quite 'strict scrutiny[]'"); *United States v. Chester*, 628 F.3d 673, 682-683 (4th Cir.2010) (applying intermediate scrutiny to statute prohibiting gun possession by person convicted of misdemeanor domestic violence); *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir.2010) (prohibition of possession of a firearm without a serial number evaluated under intermediate scrutiny).

### Applying *Heller*

{¶14} In light of *Heller*, it is clear that the Second Amendment requires a greater level of scrutiny for laws that infringe upon its protections than the Ohio Constitution, and, therefore, the trial court's conclusion to the contrary was erroneous. Accordingly, we reverse the trial court's denial of Mr. Shover's motion to dismiss and remand the matter. On remand, the trial court should determine in the first instance whether the Second Amendment right to bear arms applies in this case, and, if it does, the trial court should then consider and apply the appropriate

level of scrutiny to R.C. 2923.16(B) to determine whether the statute violates Mr. Shover's Second Amendment rights.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED GIVING A JURY INSTRUCTION ON THE DEFENSE OF NECESSITY.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING COURT COSTS AGAINST DEFENDANT WITHOUT COMPLYING WITH R.C. 2947.23(A).

ASSIGNMENT OF ERROR IV

DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT'S IMPOSITION OF COURT COSTS UNDER R.C. 2947.23(A) WAS DEFECTIVE.

ASSIGNMENT OF ERROR V

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING A FINE AGAINST DEFENDANT WITHOUT COMPLYING WITH R.C. 2929.19(B)(6).

ASSIGNMENT OF ERROR VI

DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT'S IMPOSITION OF A FINE WAS IMPROPER WITHOUT CONSIDERING DEFENDANT'S ABILITY TO PAY THE AMOUNT OF THE FINE.

{¶15} Mr. Shover's remaining assignments of error are not ripe for review at this time because, should the trial court determine that R.C. 2923.16(B) is unconstitutional, they would become moot.

III.

**{¶16}** The denial of Mr. Shover's motion to dismiss is reversed, and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
CONCURS.

DICKINSON, J.
DISSENTING.

{¶17} In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court "consider[ed] whether a District of Columbia prohibition on the possession of usable handguns in the home violates the Second Amendment to the Constitution." *Id*. at 573. The Court held that the ban violated the Second Amendment's "individual right to bear arms for defensive purposes." *Id.* at 602, 635. Writing for the majority, Justice Scalia rejected the argument that the Second Amendment protects only a right to possess and carry a firearm in connection with militia service and concluded that it guarantees "the individual right to possess and carry weapons in case of confrontation." *Id.* at 592.

{¶18} The Court noted, however, that the right was not unlimited. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). "[W]e do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose." *Id.* Justice Scalia explained that, historically, "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. The Court identified several "presumptively lawful regulatory measures," such as those prohibiting possession of firearms by felons and the mentally ill and regulations forbidding the carrying of firearms in "sensitive places" such as schools and government buildings, but noted that the list of presumptively lawful regulations was not intended to be "exhaustive." *Id.* at 626-27, n.26. The Court in *Heller* emphasized

that "the inherent right of self-defense has been central to the Second Amendment right" and determined that the District of Columbia handgun ban "amounts to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose." *Id.* at 628. It further determined that the prohibition could not pass constitutional muster under "any of the standards of scrutiny [ever] applied [by the Supreme Court] to enumerated constitutional rights" because the ban extended to the home "where the need for defense of self, family, and property is most acute." *Id.*

{¶19} Although the United States Supreme Court did not hold that the Second Amendment right to carry firearms for self-defense extends outside the home, my reading of *Heller* leads me to believe that the scope of the right described by Justice Scalia is not limited to one's household. In *Heller*, the Court indicated that a complete ban of useable handguns in the home would not be constitutional because the "need for defense of self, family, and property is most acute [in the home]." *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). Thus, the Court implied that the right to defend oneself or one's family extends outside the home, but that the right may be somewhat more regulated in areas where the need to defend is less "acute." *Id.* The Court also stated by way of example that regulations prohibiting the carrying of firearms in "sensitive places" such as schools and government buildings would be "presumptively lawful." *Id.* at 626-27, n.26. This language implies that the Second Amendment right to possess and carry a firearm extends to at least some public places.

{¶20} Two years after *Heller*, the United States Supreme Court decided *McDonald v. City of Chicago*, ____ U.S. ____, 130 S. Ct. 3020 (2010). In *McDonald*,

the Court noted that in *Heller* it had "held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense." *Id.* at 3026. The Court in *McDonald* held that the Second Amendment right described in *Heller* is fundamental and "fully applicable to the States" through the Fourteenth Amendment. *Id.* at 3026, 3046. The Court noted that the States' "ability to devise solutions to social problems that suit local needs and values" is limited by that right, "but by no means eliminate[d]." *Id.* at 3046. Since the Supreme Court released its decisions in *Heller* and *McDonald*, federal and state courts nationwide have been grappling with Second Amendment challenges to many different gun control regulations.

{¶21} In *Heller*, the Court did not indicate what level of scrutiny applied to the particular laws being challenged, but did offer some guidance for future cases. The Court seemed to suggest a two-step approach to determine whether a statute violates the Second Amendment to the United States Constitution. *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). First, we must determine "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* If it does, then, according to the Third Circuit, we must "evaluate the law under some form of means-end scrutiny" to determine its constitutionality. *Id. But see* Allen Rostron, *Justice Breyer's Triumph in the Third Battle Over the Second Amendment*, 80 Geo. Wash. L. Rev. 703, 737 (2002) (suggesting that Chief Justice Roberts' comments during oral argument in *Heller* and Justice Scalia's majority opinion in that case indicate that the *Heller* majority believes that "the conventional formulas for applying constitutional rights, like intermediate scrutiny and strict scrutiny, would be unnecessary

in the Second Amendment setting because a more historically oriented approach would be used.").

{¶22} In *Heller*, Justice Scalia rejected the use of the rational-basis test "to evaluate the extent to which a legislature may regulate a specific, enumerated right [such as] . . . the right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 629 n.27 (2008). Justice Scalia also rejected Justice Breyer's recommendation that regulations challenged under the Second Amendment ought to be evaluated using an interest-balancing test that would permit courts to weigh the constitutional right to bear arms against the government's concern for the safety of its citizens. *Id.* at 634 ("The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all."); *see also McDonald v. City of Chicago*, ____ U.S. ____, 130 S. Ct. 3020, 3047 (2010) (pointing out that, in *Heller*, the Supreme Court had "expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing" as state courts often do to analyze similar state constitutional challenges).

{¶23} Later in *McDonald*, Justice Alito, writing for a plurality of the Court, rejected the City's argument that state and local governments should be able to "enact any gun control law that they deem to be reasonable" because "different jurisdictions have divergent views on the issue of gun control." *McDonald v. City of Chicago*, ____ U.S. ____, 130 S. Ct. 3020, 3046 (2010). Justice Alito wrote that, "[u]nder our

precedents, if a Bill of Rights guarantee is fundamental from an American perspective, then, unless *stare decisis* counsels otherwise, that guarantee is fully binding on the States and thus *limits* (but by no means eliminates) their ability to devise solutions to social problems that suit local needs and values." *Id.*

{¶24} In this case, the trial court relied on Ohio Supreme Court precedent involving challenges to statutes as violating Ohio's Constitution to evaluate this federal constitutional challenge. Mr. Shover moved the trial court to dismiss the charge, arguing that Section 2923.16(B) of the Ohio Revised Code violates his federal Second Amendment right. The State did not submit a written response to the motion. On appeal, neither party has briefed the key issue left open by the United States Supreme Court, that is, what level of scrutiny applies to this type of challenge. Because I believe that Section 2923.16(B) imposes a burden on conduct falling within the scope of the Second Amendment right outlined in *Heller*, I would ask the parties to brief the issue of what test applies to evaluate whether the statute unconstitutionally impinges upon that right as a prelude to this Court deciding that question of law. A remand at this time serves no purpose.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.