[Cite as *State v. Shover*, 2014-Ohio-373.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26800 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SEAN SHOVER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2010 09 2587(B) |

DECISION AND JOURNAL ENTRY

Dated: February 5, 2014

MOORE, Presiding Judge.

{¶1} Defendant-Appellant, Sean E. Shover, appeals from the February 14, 2013 judgment entry of the Summit County Court of Common Pleas. We affirm, in part, reverse, in part, and remand for further proceedings.

I.

{¶2} The facts and procedural history of this matter are set forth in *State v. Shover*, 9th Dist. Summit No. 25944, 2012-Ohio-3788, ¶ 2-3 ("*Shover I*") as follow:

\* \* \*

Mr. Shover's father received a call from Mr. Shover's brother, who said that he owed a man $20 and that the man had a gun. Mr. Shover and his father drove to Akron to give Mr. Shover's brother the money. As Mr. Shover's brother had been shot before, Mr. Shover's father brought a loaded gun along for protection. The two men arrived at a gas station, and Mr. Shover's brother entered the back seat of the car. Police, responding to a reported kidnapping, surrounded the vehicle and ordered the men out. After the men had exited the vehicle, one of the officers saw the gun between the seats of the car, and Mr. Shover, his father, and his brother were arrested.

A jury convicted Mr. Shover of improper handling of a firearm in a motor vehicle but acquitted him of resisting arrest. The jury could not reach a verdict on the charge of carrying a concealed weapon, which was subsequently dismissed at the State's request. The trial court sentenced Mr. Shover to 18 months of community control and ordered him to pay a $500 fine as well as court costs.

* * *

{¶3} Mr. Shover appealed, arguing that his conviction for improperly handling a firearm in a motor vehicle was unconstitutional in light of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, ___ U.S. ___, 130 S.Ct. 3020 (2010). *Id*. at ¶ 4. This Court reversed and remanded for further proceedings to determine "whether the Second Amendment right to bear arms applie[d] in this case," and, if so, directed the trial court to "consider and apply the appropriate level of scrutiny to R.C. 2923.16(B) to determine whether the statute violated Mr. Shover's Second Amendment rights." *Id.* at ¶ 14.

{¶4} On remand, the trial court reinstated Mr. Shover's previous judgment, concluding that:

[T]he Second Amendment to the U.S. Constitution applies to the activity of [Mr. Shover] in this case. After considering [Mr. Shover's] interests in his Second Amendment rights and the government's objectives in enacting R.C. 2923.16, the court determines that R.C. 2923.16 is subject to an intermediate level of scrutiny. After applying intermediate scrutiny, the court concludes that R.C. 2923.16 is constitutional. * * *

{¶5} Mr. Shover appealed, raising seven assignments of error for our consideration. To facilitate our discussion, we will address certain assignments of error together.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT DISMISSING [MR. SHOVER'S] CHARGE OR CONVICTION OF IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE BECAUSE THE CHARGE AND CONVICTION WERE UNCONSTITUTIONAL UNDER THE U.S. CONSTITUTION'S SECOND AMENDMENT AND ART. I, § 4 OF THE OHIO CONSTITUTION.

{¶6}    In his first assignment of error, Mr. Shover challenges the constitutionality of R.C. 2923.16(B), which states that "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." Specifically, Mr. Shover contends that he has a Second Amendment right to possess a firearm in his vehicle for self-protection and protection of others and that the statute infringes upon that right.

{¶7}    According to the record, the trial court concluded that the Second Amendment applies in this case, that the rights conferred upon Mr. Shover by the Second Amendment extend outside the home, but that the statutory provision is an appropriate limitation or regulation of the right to bear arms. The trial court reasoned as follows:

> * * *
>
> In the present case, [Mr. Shover] also argues that the right to bear arms extends to his motor vehicle. The right to bear arms existed at common law before the Second Amendment was adopted. [Mr. Shover] argues that when the Second Amendment was drafted, it was intended to protect individual's rights to carry arms in public. As [Mr. Shover] points out, the Revolution was not fought in the colonists' kitchens and living rooms. When the Minutemen answered the call to arms on April 19, 1775, they carried arms. A home-bound Second Amendment right to bear arms would have been nonsensical because it would not have permitted the militia it purported to protect even to gather and train, let alone enter into active service.
>
> Upon due consideration of the applicable case law and the parties' arguments, the court concludes that [Mr. Shover] has a fundamental right to bear arms under the Second Amendment while occupying a motor vehicle. The right to keep and bear arms, recognized by the Second Amendment, was not intended to be limited to the home. Moreover, as noted in *McDonald* [], the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment and applies it to the states. As a result, state laws that limit the right to keep and bear arms must pass federal constitutional muster.

Further, the trial court applied intermediate scrutiny to R.C. 2923.16(B), and found it to be constitutional, stating:

\* \* \*

As noted above, R.C. 2923.16 does not completely prohibit an individual from carrying arms in his or her motor vehicle. R.C. 2923.16(F)(5) renders the prohibitions set forth in divisions (B) and (C) of 2923.16 inapplicable to persons who have been issued a license or temporary emergency license, to carry a concealed handgun. This statute was enacted to preserve the safety of drivers on Ohio roads and the state's law enforcement personnel.

\* \* \*

In *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, the [Supreme Court of Ohio] upheld the constitutionality of R.C. 2923.12, the concealed carry statute, albeit without articulating the standard of scrutiny it was applying in reaching that conclusion. If it was constitutional for the state legislature to restrict the Second Amendment rights of Ohio citizens to carry loaded firearms by way of the concealed carry law, it is no less appropriate for the legislature to require citizens who wish to have loaded handguns in their cars to have such permits.

\* \* \*

For these reasons, the court determines that there is a reasonable fit between R.C. 2923.16 and the substantial governmental interest of preserving the safety of drivers and passengers in motor vehicles, and police officers. Accordingly, R.C. 2923.16 is constitutional.

\* \* \*

{¶8} We review constitutional challenges de novo. *State v. Honey*, 9th Dist. Medina No. 08CA0018-M, 2008-Ohio-4943, ¶ 4. Additionally, "[t]his Court recognizes a strong presumption that legislative enactments are constitutional, and before we will declare a statute unconstitutional, 'it must appear beyond a reasonable doubt that the legislation and constitutional provision are clearly incapable of coexisting.'" *Id.*, quoting *State v. Gill*, 63 Ohio St.3d 53, 55 (1992), citing *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. This Court has also recognized that "courts decide constitutional issues only when absolutely necessary." *State v. Bales*, 9th Dist. Lorain No. 11CA010126, 2012-Ohio-4426, ¶ 18, quoting *Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, ¶ 54. However, "such necessity is

absent where other issues are apparent in the record which will dispose of the case on its merits." *Greenhills Home Owners Corp. v. Village of Greenhills*, 5 Ohio St.2d 207, 212 (1966).

{¶9} The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

{¶10} In *Heller*, the United States Supreme Court "considered a Second Amendment challenge to three ordinances enacted by the District of Columbia, which (1) totally banned the possession of handguns in the home and (2) required that any lawfully-owned firearms in the home be disassembled or bound by a trigger lock at all times, rendering them inoperable." *State v. Henderson*, 11 Dist. Portage No. 2010-P-0046, 2012-Ohio-1268, ¶ 42. After an historical analysis of the Second Amendment, the *Heller* majority held that "the Second Amendment confers an individual right to keep and bear arms * * *." *Heller* at 622. Further, the *Heller* majority held that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Id*. at 635. The Court explained its reasoning as follows:

> There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms. Of course the right was not unlimited, just as the First Amendment's right of free speech was not. Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*.
>
> * * *
>
> As the quotations earlier in this opinion demonstrate, the inherent right of self-defense has been central to the Second Amendment right. The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose. The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is

> most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family, would fail constitutional muster.

(Emphasis sic.) (Quotations and citations omitted.) *Id.* at 595, 628-29. While the *Heller* majority did not define the outer limits of the Second Amendment right to keep and bear arms, it indicated certain limitations, stating:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. *Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment*, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

(Emphasis added.) *Id.* at 626-27.

{¶11} Then, approximately two years later, in *McDonald*, 130 S.Ct. 3026, the United States Supreme Court reaffirmed its decision in *Heller*, and extended the Second Amendment right to keep and bear arms to the States through the Fourteenth Amendment, stating:

> Two years ago, in *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down a District of Columbia law that banned the possession of handguns in the home. The city of Chicago (City) and the village of Oak Park, a Chicago suburb, have laws that are similar to the District of Columbia's, but Chicago and Oak Park argue that their laws are constitutional because the Second Amendment has no application to the States. We have previously held that most of the provisions of the Bill of Rights apply with full force to both the Federal Government and the States. Applying the standard that is well established in our case law, we hold that the Second Amendment right is fully applicable to the States.

The *Heller* and *McDonald* decisions, however, left unanswered questions as to whether the Second Amendment right to keep and bear arms exists outside the home, and, if it does, to what

extent.  Further, neither *Heller*, nor *McDonald*, set forth the level of scrutiny to apply to laws that burden Second Amendment rights.

{¶12}  In *U.S. v. Masciandaro*, 638 F.3d 458, 471 (4th Cir.2011), the Fourth Circuit Court of Appeals applied intermediate scrutiny to a regulation making it illegal for a person to carry or possess a loaded weapon in a vehicle within national park areas.  However, the Fourth Circuit declined to decide whether the Second Amendment right to keep and bear arms extends outside the home.  The Fourth Circuit stated its reasoning as follows:

> This case underscores the dilemma faced by lower courts in the post-*Heller* world:  how far to push *Heller* beyond its undisputed core holding.  On the question of *Heller's* applicability outside the home environment, we think it prudent to await direction from the [United States Supreme] Court itself. * * *
>
> There may or may not be a Second Amendment right in some places beyond the home, but we have no idea what those places are, what the criteria for selecting them should be, what sliding scales of scrutiny might apply to them, or any one of a number of other questions. * * * The whole matter strikes us as a vast [unknown land] that courts should enter only upon necessity and only then by small degree.
>
> There is no such necessity here. We have no reason to expound on where the *Heller* right may or may not apply outside the home because * * * intermediate scrutiny of any burden on the alleged right would plainly lead the court to uphold the * * * regulation.
>
> * * *

*Masciandaro* at 475.

{¶13}  Here, we follow the Fourth Circuit's reasoning, and decline to address whether the Second Amendment right to keep and bear arms applies outside the home.  As in *Masciandaro*, this matter does not necessitate that we reach beyond the law set forth in *Heller* and *McDonald*.  Assuming without deciding, that the Second Amendment extends outside the home, and specifically to motor vehicles, we agree with the trial court's well-reasoned conclusion that intermediate scrutiny should apply to R.C. 2923.16(B) because it acts as a regulation to preserve the safety of Ohio drivers and the state's law enforcement personnel.

**{¶14}** "[I]n applying the intermediate scrutiny standard to legislation that regulates the Second Amendment, such legislation (1) must be narrowly tailored to serve a significant government interest, and further, it (2) must leave open alternative means of exercising the right." *State v. Henderson*, 11th Dist. Portage No. 2010-P-0046, 2012-Ohio-1268, ¶ 52, citing *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37 (1983). In *Henderson* at ¶ 53-54, the Eleventh District Court of Appeals applied intermediate scrutiny to R.C. 2923.16(B), and concluded that it passed constitutional muster. First, the court stated that R.C. 2923.16(B) "is substantially related to furthering public safety," by preventing "an operator or passenger from using the loaded firearm as a weapon from inside the car for such criminal activities as drive-by shootings, narcotics transactions, or assaults on police officers." *Id*. at ¶ 53. Further, the court stated that R.C. 2923.16(B) is narrowly tailored to promote public safety because it is limited to those individuals who do not have concealed carry permits and who transport loaded firearms in motor vehicles in such a way that they have access to those firearms without having to leave their vehicle. *Id*. at ¶ 54. Finally, the court indicated that R.C. 2923.16 leaves open alternative means to keep and bear arms in a motor vehicle through R.C. 2923.16(E)(1) and (3), which create exceptions for those individuals having concealed carry permits pursuant to R.C. 2923.12. *Id*. at ¶ 55.

**{¶15}** Based upon this reasoning, we conclude that *if* the Second Amendment right to keep and bear arms does extend to motor vehicles, intermediate scrutiny would apply to R.C. 2923.16(B), and R.C. 2923.16(B) would pass constitutional muster.

**{¶16}** Accordingly, Mr. Shover's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

UNDER THE "LAW OF THE CASE" DOCTRINE, [MR.] SHOVER'S CONVICTION FOR IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE IS INVALID AND A LEGAL NULLITY.

{¶17} In his second assignment of error, Mr. Shover argues that pursuant to the "law of the case" doctrine, his conviction for improperly handling firearms in a motor vehicle is a legal nullity because the proceedings must begin anew from the original denial of his motion to dismiss. As such, Mr. Shover argues that he should be granted a new trial in this matter.

{¶18} The State responds by arguing that, in *Shover I*, this Court only issued a limited remand to determine whether the Second Amendment applies, and if so, to further determine the level of scrutiny with which to analyze R.C. 2923.16(B). According to the State, the trial court complied with this Court's limited remand by determining that the Second Amendment applied, and reviewing R.C. 2923.16(B) under an intermediate level of scrutiny. Upon making the determination that R.C. 2923.16(B) passed constitutional muster, the State contends that the trial court properly reinstated Mr. Shover's conviction for improperly handling firearms in a motor vehicle.

{¶19} "A limited remand without retrial is permissible, and oftentimes necessary, when dispositive issues are unaddressed by the trial court." *State v. Hogan*, 10th Dist. Franklin No. 11AP-644, 2012-Ohio-1421, ¶ 14. (*See also State v. Keith*, 10th Dist. Franklin No. 08AP-28, 2008-Ohio-6122, ¶ 40, where 10th District Court of Appeals issued limited remand to trial court instructing it to address the merits of the appellant's motion to suppress and reinstate the verdict if motion is denied). In *Shover I*, this Court reversed, *in part*, and remanded to the trial court to determine (1) whether the Second Amendment applied to R.C. 2923.16(B), and, if it did apply, (2) the appropriate level of scrutiny to analyze the statute's constitutionality. However, this

Court's decision in *Shover I* did not grant a new trial to Mr. Shover if R.C. 2923.16(B), in fact, passed constitutional muster. Therefore, similar to *Hogan* and *Keith*, we conclude that the trial court properly reinstated Mr. Shover's conviction for improperly handling firearms in a motor vehicle after following this Court's instructions on remand, and determining that R.C. 2923.16(B) is constitutional.

{¶20} Accordingly, Mr. Shover's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED GIVING A JURY INSTRUCTION ON THE DEFENSE OF NECESSITY.

{¶21} In his third assignment of error, Mr. Shover argues that the trial court erred in denying his request to give a jury instruction on the affirmative defense of necessity, along with the jury instruction for improperly handling a firearm in a motor vehicle.

{¶22} Because Mr. Shover did not object to the jury instructions, he has forfeited all but plain error. *See State v. Eafford,* 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11. Pursuant to Crim.R. 52, plain error will only be found if it affects a substantial right. "There are three requirements to finding plain error." *State v. Proctor*, 9th Dist. Summit No. 26740, 2013-Ohio-4577, ¶ 4, citing *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 15-16. "First, there must be an error." *Proctor* at ¶ 4, citing *Payne* at ¶ 16. "Second, the error must be obvious." *Proctor* at ¶ 4. "Lastly, the error must have affected the outcome of the trial." *Id.*, citing *State v. Barnes,* 94 Ohio St.3d 21, 27 (2002). "The plain error rule should be applied with caution and should be invoked only to avoid a clear miscarriage of justice." *Proctor* at ¶ 4, quoting *State v. Long,* 53 Ohio St.2d 91, 95 (1978).

{¶23} Upon careful review of the record, we conclude that the trial court did not commit plain error in charging the jury without an instruction on the affirmative defense of necessity. In his appellate brief, Mr. Shover argues that the jury instructions for *improperly handling a firearm*, in violation of R.C. 2923.16, should have included the affirmative defense of necessity as set forth in OJI 523.12(C). However, OJI 523.12(C) applies to R.C. 2923.12, *carrying concealed weapons*. According to the record, Mr. Shover was acquitted of the charge of carrying concealed weapons, and the State later dismissed this count from the indictment. As such, Mr. Shover was not prejudiced by the fact that the trial court denied his request for including this instruction to the jury.

{¶24} Further, we note that Mr. Shover does not present an argument on appeal as to OJI 523.16, the jury instruction for improperly handling a firearm. Specifically, Mr. Shover fails to show how OJI 523.16(D)(1) and (2) apply to the facts in this case. As such, the trial court did not commit plain error by excluding these instructions from its charge to the jury.

{¶25} Accordingly, Mr. Shover's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING COURT COSTS AGAINST [MR. SHOVER] WITHOUT COMPLYING WITH R.C. 2947.23(A)(1)([a]).

## ASSIGNMENT OF ERROR V

[MR. SHOVER] WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT'S IMPOSITION OF COURT COSTS UNDER R.C. 2947.23(A)(1)([a]) WAS DEFECTIVE.

{¶26} In his fourth and fifth assignments of error, Mr. Shover argues that at the April 5, 2011 sentencing hearing, the trial court failed to substantially comply with R.C. 2947.23(A)(1)(a), and he was denied the effective assistance of trial counsel because his attorney

failed to argue that the trial court's imposition of court costs was defective. Specifically, Mr. Shover argues that R.C. 2947.23(A)(1)(a)(i) and (ii) required the trial court to notify him that (1) his failure to pay court costs could result in the imposition of community service of not more than forty hours a month, and (2) he would receive credit toward the court costs for each hour of community service performed.

{¶27} R.C. 2947.23 (A)(1)(a) states that:

In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. If the judge or magistrate imposes a community control sanction or other nonresidential sanction, the judge or magistrate, when imposing the sanction, shall notify the defendant of both of the following:

(i) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

(ii) If the court orders the defendant to perform community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

{¶28} This Court has held that "it is reversible error for a trial court to fail to comply with the community service notifications of R.C. 2947.23(A)(1)(a) & (A)(1)(b) * * *." *State v. Flint*, 9th Dist. Summit No. 26308, 2012-Ohio-5268, ¶ 13, quoting *State v. Ross,* 9th Dist. Summit No. 25778, 2012-Ohio-1389, ¶ 28.

{¶29} Here, the record reflects that the trial court imposed court costs at Mr. Shover's sentencing hearing. The record also reflects that the trial court did not inform Mr. Shover that his failure to pay court costs could result in the imposition of community service or that he would receive credit toward the court costs from any community service ordered and performed. As such, the trial court failed to comply with the community service notifications set forth in

R.C. 2947.23. The "proper remedy" for a trial court's failure to comply with the notification provisions of R.C. 2947.23 "is to reverse the trial court's imposition of court costs and remand for the proper imposition of court costs in accordance with the requirements set forth in [the statute]." *Flint* at ¶ 14, quoting *State v. Debruce,* 9th Dist. Summit No. 25574, 2012-Ohio-454, ¶ 38.

**{¶30}** Accordingly, Mr. Shover's fourth assignment of error is sustained.

**{¶31}** Further, in sustaining Mr. Shover's fourth assignment of error, we conclude that his fifth assignment of error regarding ineffective assistance of trial counsel on the same issue is moot. *See* App.R. 12 (A)(1)(c).

### ASSIGNMENT OF ERROR VI

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ASSESSING A FINE AGAINST [MR. SHOVER] WITHOUT COMPLYING WITH R.C. 2929.19(B)(6).

### ASSIGNMENT OF ERROR VII

[MR. SHOVER] WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT'S IMPOSITION OF A FINE WAS IMPROPER WITHOUT CONSIDERING [MR. SHOVER'S] ABILITY TO PAY THE AMOUNT OF THE FINE.

**{¶32}** In his sixth and seventh assignments of error, Mr. Shover argues that the trial court erred in assessing a $500 fine against him without complying with R.C. 2929.19(B)(5)[1], and that his trial counsel was ineffective for failing to raise this issue below. Specifically, Mr. Shover argues that prior to issuing the $500 fine, the trial court did not consider Mr. Shover's present or future ability to pay the amount of the fine.

---

[1] As of September 30, 2011, R.C. 2929.19(B)(6) was renumbered to R.C. 2929.19(B)(5). Both code sections are identical.

**{¶33}** R.C. 2929.19(B)(5) states that "[b]efore imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." "[T]here are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record." *State v. Williams*, 9th Dist. Summit No. 26014, 2012-Ohio-5873, ¶ 17, quoting *State v. Martin,* 140 Ohio App.3d 326, 327 (4th Dist.2000). However, the record must reflect that the trial court actually considered a defendant's ability to pay. *Williams* at ¶ 17. "A trial court commits plain error by ordering a defendant to pay restitution without first considering his ability to pay." *Id*. citing *State v. Andrews,* 1st Dist. Hamilton No. C-110735, 2012-Ohio-4664, ¶ 32.

**{¶34}** Here, without first considering Mr. Shover's present or future ability to pay, the trial court stated that "[t]he [c]ourt is going to impose a monetary fine upon you in the amount of $500." The record indicates that after the trial court imposed the fine, there was no further discussion regarding this issue. Additionally, the sentencing entry does not reflect that the trial court had previously considered Mr. Shover's present or future ability to pay the $500 fine. *See Williams* at ¶ 19. Therefore, because the record is completely silent on whether the trial court considered Mr. Shover's present or future ability to pay the fine before imposing it, the trial court committed plain error. *See id*.

**{¶35}** Accordingly, Mr. Shover's sixth assignment of error is sustained.

**{¶36}** Further, in sustaining Mr. Shover's sixth assignment of error, we conclude that his seventh assignment of error regarding ineffective assistance of trial counsel on the same issue is moot. *See* App.R. 12 (A)(1)(c).

III.

{¶37} In overruling Mr. Shover's first, second, and third assignments of error, sustaining Mr. Shover's fourth and sixth assignments of error, and deeming Mr. Shover's fifth and seventh assignments of error moot, this Court affirms, in part, reverses, in part, the judgment of the Summit County Court of Common Pleas and remands this matter for further proceedings consistent with this decision.

Judgment affirmed in part,<br>
reversed in part,<br>
and remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.


CARLA MOORE
FOR THE COURT

CARR, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶38}  I concur in judgment only on the basis that I would conclude that the individual right to bear arms contained in the Second Amendment extends to motor vehicles.

{¶39}  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court was confronted with the question of whether a District of Columbia statute prohibiting the possession of operable handguns within the home violated the Second Amendment to the U.S. Constitution.  The high court answered that question in the affirmative and held that the Second Amendment conferred an individual right to keep and bear arms, principally for self-defense purposes.  *Id*.  Subsequently, in *McDonald v. Chicago*, 130 S.Ct. 3020 (2010), the Supreme Court addressed the question of whether Second Amendment was applicable to the States.  The court also answered this question in the affirmative, holding that the Second Amendment right is "fully applicable" to the States.  *McDonald*, 130 S.Ct. at 3026.

{¶40}  Because the statutes at issue in both *Heller* and *McDonald* dealt specifically with handgun restrictions within the home, the court's central holdings in those cases "did not define the outer limits of the Second Amendment right to keep and bear arms."  *U.S. v. Masciandaro*, 638 F.3d 458, 466 (4th Cir.2011).  However, the *Heller* court did undertake a careful and deliberate analysis of the meaning of both the prefatory and operative clauses of the Second Amendment, and concluded that the amendment, at its core, ensured the individual right of all Americans to have and carry weapons in case of confrontation.  *Heller*, 554 U.S. at 579-603.  While the court acknowledged that the right was not unlimited, it repeatedly emphasized that the Second Amendment secured an individual right that existed outside the context of an organized militia, and that the individual right to bear arms existed for self-defense purposes.  *Id*.

Undoubtedly, in light of the Supreme Court's decision in *Heller*, "[t]he Second Amendment * * * is now clearly an important individual right, which should not be given short shrift." *U.S. v. Tooley*, 717 F.Supp2d 580, 585 (S.D.W.V.2010).

{¶41} As the Seventh Circuit has observed, "one doesn't have to be an historian to realize that a right to keep and bear arms for personal self-defense in the eighteenth century could not rationally have been limited to the home." *Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir.2012). It is axiomatic that the need to act in self-defense may arise outside the confines of one's home, and specifically in a motor vehicle. The Ohio General Assembly expressly acknowledged this reality by enacting R.C. 2901.09(B), which provides that a person who is lawfully an occupant of either a "residence" or "vehicle" has "no duty to retreat before using force in self-defense or defense of another." Though *Heller* and *McDonald* say that "'the need for defense of self, family, and property is *most acute*' in the home," that language does not mean that the need for defense of self, family and property never arises out of the home. *Moore*, 702 F.3d at 935. In fact, by using the modifier "most" in front of "acute," the court acknowledged the need for self-defense in places other than the home. As the Second Amendment primarily ensures the right of an individual to bear arms "in case of confrontation," surely the contours of that right would extend to situations where an individual would need to act in self-defense outside the individual's home. *Heller,* 554 U.S. at 592. Moreover, because the court identified reasonable restrictions such as "carrying[] firearms in sensitive places such as schools and government buildings," the court clearly acknowledged that the scope of the Second Amendment reaches beyond the home. *Heller,* 554 U.S. at 626-627. Otherwise, such "restrictions" need not be identified or examined. If the restrictions do not "impose[] a burden

on conduct falling within the scope of the Second Amendment's guarantee," the inquiry ends there. *U.S. v. Marzzarella*, 614 F.3d 85, 89 (3d Cir.2010).

{¶42} Furthermore, it is significant that the language of the Second Amendment protects the right of the people to both "keep *and bear* Arms." (emphasis added). I agree with the Seventh Circuit's observation that "The right to 'bear' as distinct from the right to 'keep' arms is unlikely to refer to the home. To speak of 'bearing' arms within one's home would at all times have been an awkward usage. A right to bear arms thus implies a right to carry a loaded gun outside the home." *Moore*, 702 F.3d at 936.

{¶43} In the instant case, I would hold that the right to bear arms ensured by the Second Amendment does, in fact, extend to motor vehicles. I would further conclude that R.C. 2923.16(B) is narrowly tailored to serve a significant government interest, and that it adequately leaves open alternative means for an individual to assert his or her Second Amendment right to bear arms.

HENSAL, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶44} I respectfully concur in judgment only on the same basis articulated in Judge Carr's separate opinion.

<u>APPEARANCES:</u>

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.